UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROSEMARY MCGAHEY,
             *PLAINTIFF,*

v.

HARVARD UNIVERSITY FLEXIBLE BENEFITS PLAN *AND* HARVARD UNIVERSITY, *AS* PLAN ADMINISTRATOR OF THE HARVARD UNIVERSITY FLEXIBLE BENEFITS PLAN
             *DEFENDANTS.*

CIVIL ACTION NO.
1:08CV-10435-RGS

## THE PLAINTIFF'S RULE 56(F) MOTION FOR FURTHER DISCOVERY
### (ORAL ARGUMENT REQUESTED)

The Plaintiff, Rosemary McGahey, respectfully moves, pursuant to Fed.R.Civ.P.56(f), that the Defendants' be required to respond to the discovery requests set forth in the attached Exhibit A, prior to any decisions favorable to the Defendants' on the parties' motions for summary judgment.

### GROUNDS FOR THIS MOTION

This Court previously denied "The Plaintiff's Motion for Discovery" and "The Plaintiff's Motion to Reconsider or Modify Order Denying Discovery", on the grounds that Mrs. McGahey failed to make a "threshold showing that the denial of benefits was improperly influenced by the administrator's conflict of interest", but allowed her to renew her request for discovery at the summary judgment stage pursuant to Fed.R.Civ.P. 56(f) upon a "showing of the improper intrusion of a conflict of interest in the administrator's decision making process." McGahey v. Harvard Univ.Flex.Ben.Plan, 2009 WL 799464 (D.Mass.). Mrs. McGahey renews her request for discovery at this time.

Mrs. McGahey contends that the papers filed in support of her motion for summary judgment and in opposition to the Defendants' motion for summary judgment clearly establish that Harvard's structural conflict is a factor that the Court is "duty-bound" to inquire into and to take into account in deciding this case. Indeed, under the required "combination of factors" analysis, the known extent of the conflict together with all other facts in the record, already prove a compelling basis upon which to grant her relief on her Complaint, either as a claim for benefits (Count I) or as a breach of fiduciary duty (Count II).  Should the Court not yet be convinced, however, or finds the case "close" such that the structural conflict issue could become the "tie-breaker", then, at a minimum, Mrs. McGahey has passed the test for justifying discovery set by this Court's prior decisions and legitimately deserves, and requires, the opportunity to flesh out the full extent of Harvard's conflict of interest in this case through such discovery. This discovery is necessary to accomplish the following:

- Identify all individuals who played a role in evaluating Mrs. McGahey's claim at the first-level and second-level review and determine the full extent to which they had a financial or other incentive that would raise a question as to their impartiality;
- Determine the extent of any impermissible duplication in the use of evaluators at the first and second levels in violation of ERISA rules;
- Provide full disclosure of the communications between Harvard claims handlers and evaluators that could have skewed the evaluation process;

- Provide full disclosure of the extent of any other violation of ERISA rules, such as the failure to provide evaluators with copies of all materials submitted by Mrs. McGahey;

- Provide full disclosure of the extent to which Harvard's on-going appeal of the DIA Orders to pay total and permanent disability benefits under workers' compensation law was a contributing strategic factor in the denial of post-24-months LTD benefits, including but not limited to the apparent inference that Harvard apparently makes that Dr. Weiner was merely a doctor-advocate under the influence of Mrs. McGahey's workers' compensation attorney.

<u>REQUEST FOR ORAL ARGUMENT</u>

The Plaintiff believes that oral argument may assist the court and therefore requests, pursuant to Local Rule 7.1(D), the opportunity to be heard in oral argument on this motion.

ROSEMARY MCGAHEY
By her attorney

/s/ Paul M. Stein

_____
Paul M. Stein BBO 478200
1136 Drift Road
Westport, MA 02790
(508) 628-3500

DATED: June 25, 2009

<u>CERTIFICATE OF SERVICE</u>

I, Paul M. Stein, hereby certify that this document, and its attachments, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 25, 2009.

/s/ Paul M. Stein
Paul M. Stein

3

## EXHIBIT A-THE PLAINTIFF'S DISCOVERY REQUESTS

Document Requests

1. All documents concerning the establishment or change to a reserve amount for the Plaintiff's disability claims.

2. All documents concerning the practice and procedures employed by the Plan to establish or change reserve amounts for disability claims on or after the date of the Plaintiff's initial injury in February 2004.

3. All documents concerning the practice and procedures employed by the Plan to prepare or conduct disability claims for review by the Benefits Appeals Committee and/or the Benefits Administrative Committee, if a separate entity (the Committees), including, without limitation, any documents employed by any members of the Committees in connection with the review of the Plaintiff's disability claims, on or after the date of the Plaintiff's initial injury in February 2004.

4. All minutes or other documents recording the proceedings or deliberations of the Committees concerning Plaintiff's disability claims.

5. The Curriculum Vitae or other comparable biographical material for each of the Committees' members and advisors to the Committees who reviewed the Plaintiff's disability claims on or after the date of the Plaintiff's initial injury in February 2004.

6. All documents concerning the practices and procedures employed by the Plan, on or after February 1, 2004, when a Plan member has filed a claim

for disability benefits and also a related workers' compensation claim arising from the same injury.

7. All communications received or documents prepared by Harvard University or Plan personnel (excluding privileged communications with counsel or communications already in the Administrative Record) concerning the Plaintiff's disability claims or the Plaintiff's workers' compensation claims for injuries sustained while a Harvard University employee.

8. All documents concerning the practices and procedures employed by the Plan on or after February 1, 2004, to consider Social Security Administration determinations of SSDI claims or Workers Compensation claims by Plan member in the Plan's disability claim decision making process, as well as any practices and procedures that require the participant to seek SSDI benefits and to repay monies received as SSDI benefits to the Plan

9. All documents concerning the active steps taken by the Plan on or after February 1, 2004, to reduce potential bias and to promote accuracy in self-insured benefits claims decision making such as walling off claims administrators from those responsible for managing or reporting fiscal or financial matters at Harvard University, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits.

10. All documents concerning or referring to the use of financial or other statistical metrics on or after February 1, 2004, for evaluation of the performance, promotion or compensation of any employee within the Harvard University Disability Claims Unit, or any other employee within the Office of Human Resources at Harvard University having management responsibility for the performance of the Disability Claims Unit or any other unit that handles self-insured employee benefits claims.

Interrogatories

1. Please identify by name and occupation, each person who participated in any way in the consideration or review of the Plaintiff's claims for LTD benefits and describe, for each such person, any other affiliation with Harvard University

2. Please identify by name and occupation, each person who participated in any way in the consideration or review of the Plaintiff's claims for workers' compensation benefits and describe, for each such person, any other affiliation with Harvard University.

3. Please provide a description of the organizational structure during the period from February 1, 2004 through May 31, 2007, of the Harvard University Office of Human Resources and any other unit within Harvard University having any responsibility for the handling of any self-insured employee benefits claims, including without limitation, disability claims and/or workers compensation claims, including the name and title of all

employees from the first-line claims handlers through the Vice-Presidential level and the type of claims over which the employee has responsibility.

4. Please provide the information described below concerning disability claims received by the Plan for the period from January 1, 2004 through May 31, 2007, per each calendar year. If the Plan maintains compilations with substantially the same the information in a different format, the Defendants' may make reasonable adjustments to this response.

    a. Total annual number of STD and LTD claims received

    b. Total annual number of STD and LTD claims approved for payment of monthly benefits

    c. Total annual number of LTD claims for which monthly benefits were terminated by the Plan after 24 months

    d. Total annual number of denied or terminated STD and LTD claims reviewed by the Benefits Appeals Committee

    e. Total annual number of claims in 3.d above that the Benefits Appeals Committee affirmed the denial of benefits

    f. Median amount of monthly LTD benefits paid

    g. Average amount of monthly LTD benefits paid

    h. Range of monthly LTD benefits paid (Smallest to Largest)

    i. Total number of LTD claims for which the Plan received SSDI reimbursement

5. For the period from January 1, 2004 through May 31, 2007, state, per each calendar year: (a) the total number of IME reports solicited from, (b) the total annual compensation paid by the Plan to, and (c) the percentage which those reports and compensation represent of the total number and dollars all IME reports solicited by Harvard University Disability Claims Unit or other unit of the Harvard University Office of Human Resources concerning other self-insured employee benefits claims.
    a. Cornerstone Medical Services, LLC
    b. Hyman Glick, M.D.
    c. Stuart J. Clayman, Ph.D.
    d. George McManama, M.D.
    e. Michael Ratner, M.D.

6. For the period from January 1, 2004 through May 31, 2007, state, per each calendar year: (a) the total number of vocational assessment reports solicited from, (b) the total annual compensation paid by the Plan to, and (c) the percentage which those reports and compensation represent of the total number and dollars all vocational assessment reports solicited by Harvard University Disability Claims Unit or other unit of the Harvard University Office of Human Resources concerning other self-insured employee benefits claims:
    a. Occupational Resource Network
    b. Sue Chase, MA. CAGS, CRC