UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-10435-RGS

ROSEMARY MCGAHEY

v.

HARVARD UNIVERSITY
FLEXIBLE BENEFITS PLAN
and HARVARD UNIVERSITY, as
PLAN ADMINISTRATOR

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

February 19, 2010

STEARNS, D.J.

On December 11, 2009, this court found that defendants Harvard University Flexible Benefits Plan and Harvard University as the Plan Administrator (collectively Harvard), wrongfully terminated Rosemary McGahey's long-term disability benefits.  Pursuant to 29 U.S.C. § 1132(g)(1), McGahey also sought attorney fees and costs.  The court in its decision signaled that a fee award in McGahey's case "may be appropriate."  The court invited McGahey to file a petition for an award, which she did on February 1, 2010.  Harvard opposes the grant of any award at all, but more specifically objects to an award of fees related to the prosecution of internal administrative appeals, as well as to the hourly billing rates (but not the total hours) submitted by McGahey's counsel in support of the petition.

BACKGROUND

McGahey brought this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, seeking disability benefits under a self-insured

employee benefit plan (Plan) sponsored by Harvard University.  The underlying facts are set out in length in McGahey v. Harvard Univ. Flexible Benefits Plan, 2009 WL 4729660 (D. Mass. Dec. 11, 2009).  In brief, McGahey was employed as the Director of Residential Dining at Harvard.  She suffered a debilitating work-related injury.  After receiving two years of total disability benefits, McGahey's application for long-term total disability benefits was denied by the Plan's Benefits Administrative Committee on March 8, 2006.  Following two unsuccessful administrative appeals, the last of which was rejected on May 16, 2007, McGahey brought a Complaint in the federal district court.   In its December 11, 2009 Memorandum and Order, the court, adopting an arbitrary and capricious standard of review, found that Harvard had abused its discretion in rejecting McGahey's benefits application by disregarding disability determinations made by the Social Security Administration and the Massachusetts Department of Industrial Accidents that were favorable to McGahey, by giving almost exclusive weight to the opinions of doctors of its own choosing, and by giving little, if any, weight to McGahey's treating physicians. Reimbursement of McGahey's filing fee for this action ($350) was ordered in the court's judgment of January 11, 2010.  McGahey now seeks an award of attorney's fees in the amount of $66,219.

## DISCUSSION

The discretionary award of attorney's fees is permitted under ERISA.  Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 225 (1st Cir. 1996).  ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."   29 U.S.C. § 1132(g)(1). The Court of Appeals has identified five non-exclusive factors that a court should consider when ruling on an application for fees

under ERISA:  (1) the bad faith or culpability of the ERISA decision maker; (2) the ability

of the plan or the administrator to satisfy an award of fees; (3) whether an award would

have a deterrent effect in similar cases in the future; (4) the extent to which the litigation

conferred a benefit on other plan members; and (5) the relative merits of the parties'

positions.  See Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 257-258 (1st Cir.

1986).  In its December 11, 2009 Memorandum and Order, the court found that "factors (2),

(3), (5), and possibly (1), suggest that an award of reasonable attorneys' fees may be

appropriate."  McGahey, 2009 WL 4729660, at *10.  While Harvard asks the court to make

no award at all, the court stands by its previous inclination.

The value of the benefits package at issue in this case is estimated at roughly

$500,000.  Although not an insubstantial sum, the court does not believe that Harvard is

unduly taxed by an award of fees roughly 10 percent the size of the disability package.  The

court notes that Harvard is a relatively wealthy institution with (as of June 30, 2009), a

private endowment of some $26 billion.[1]  An award in this case will also serve a deterrent

purpose by sensitizing plan administrators to the conflict-of-interest created by requiring

beneficiaries to pursue disability determinations by state and federal agencies, and by then

giving no weight to decisions favorable to the claimant.  Although inconsistent outcomes

are often simply a reflection of different standards of review, and thus have no preclusive

effect in a plan's internal decisionmaking process, they should at least be given fair

probative consideration.  See 29 C.F.R. § 2560.503-1(h)(2)(iv) ("[T]he claims procedures

---

[1]See Jane L. Mendillo, Harvard Management Company Endowment Report (2009), http://www.hmc.harvard.edu/docs/2009%20HMC%20Endowment%20Report.pdf    (last visited Feb. 17, 2010).

of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures . . . [p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim . . . ."); Glenn v. Metro. Life Ins. Co., 461 F.3d 660, 672 (6th Cir. 2006), aff'd, 128 S. Ct. 2343 (2008) ("[F]ailure to consider evidence that is offered after an initial denial of benefits renders a final denial of benefits arbitrary and capricious.").  As for the merits of the parties' positions, as explained in the court's earlier decision, McGahey's is the more reasonable, as reflected by the fact that she has overcome a standard of review that is "highly – one might even say reverentially - deferential" towards decisions of plan administrators.  McGahey, 2009 WL 4729660, at *10.  Based on an assessment of the five factors, the court believes that a fee award is appropriate.[2]

I will first address McGahey's request for reimbursement of fees associated with the Plan's internal administrative appeals process.  As Harvard points out, this court has previously stated that "[u]ntil the First Circuit considers the issue, [it] will follow the lead of other federal circuits who have unanimously concluded that ERISA attorney's fees are categorically unavailable for expenses incurred while exhausting administrative remedies." Giannone v. Metro. Life Ins. Co., 2004 WL 1588310, at *2 (D. Mass. Jul. 16, 2004)

_____

[2]With regard to the first factor, the court is not inclined to find that Harvard acted in bad faith.  It finds only that Harvard weighed the evidence in the case in a one-sided manner, and then overzealously applied the Plan's rules governing a finding of long-term disability.  The court finds the fourth factor – the potential benefit conferred on other Plan members – to weigh somewhat in McGahey's favor in that Plan members who become disabled in the future may receive more scrupulous treatment of their disability applications.

(Stearns, J.) (internal quotations omitted).  Although the First Circuit has yet to address the

issue, the number of Circuits that refuse to approve an award of fees for the prosecution

of administrative appeals has grown since the Giannone decision.  See Colby v. Assurant

Employee Benefits, 635 F. Supp. 2d 88, 98 (D. Mass. 2009) (Young, J.).[3]

The now considerable weight of circuit authority is consistent with the stated

purposes of the ERISA statute.  As the Fourth Circuit explained in Rego:

> ERISA is characterized in part by a congressional "desire not to create a
> system that is so complex that administrative costs, or litigation expenses,
> unduly discourage employers from offering welfare benefit plans in the first
> place." [Varity Corp. v. Howe, 516 U.S. 489, 497 (1996).]  For this reason,
> Congress required benefits plans to create internal dispute resolution
> procedures in order "to minimize the number of frivolous ERISA lawsuits;
> promote the consistent treatment of benefit claims; provide a nonadversarial
> dispute resolution process; and decrease the cost and time of claims
> settlement." Makar v. Health Care Corp. of Mid-Atlantic (Carefirst), 872 F.2d
> 80, 83 (4th Cir.1989).  If attorneys were injected into those administrative
> procedures as a matter of course, it would establish a far higher degree of
> formality and lead to more protracted litigation in a great many cases.  The

---

[3]Judge Young's opinion cites Kahane v. UNUM Life Ins. Co. of Am., 563 F.3d 1210, 1215 (11th Cir. 2009) ("We join these other circuits in holding that § 1132(g)(1) does not authorize awards for work done in pre-litigation administrative proceedings."); Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 313 (3d Cir. 2008) ("[W]e agree with our sister circuits, and conclude that the fees incurred during administrative proceedings prior to filing suit are unavailable under 29 U.S.C. § 1132(g)(1)."); Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1011 (8th Cir. 2004) ("We join the Second, Fourth, Sixth, and Ninth Circuits in holding that the term 'any action' in 29 U.S.C. § 1132(g)(1) does not extend to pre-litigation administrative proceedings."); Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003) ("[W]e agree with our sister circuits that have held ERISA's attorney's fees to be categorically unavailable for expenses incurred while exhausting administrative remedies."); Peterson v. Continental Cas. Co., 282 F.3d 112, 121 (2d Cir. 2002) ("[B]oth the text of § 1132(g)(1) and cases interpreting that provision lead to the conclusion that ERISA authorizes the award only for fees incurred in relation to a suit filed in a court of competent jurisdiction."); Anderson v. Procter & Gamble Co., 220 F.3d 449, 456 (6th Cir. 2000) ("ERISA does not authorize recovery of attorneys' fees for work performed during the administrative exhaustion phase of a benefits proceedings."); Cann v. Carpenters' Pension Trust Fund for N. Cal., 989 F.2d 313, 316 (9th Cir. 1993) ("We construe [§ 1132(g)(1)] as limiting the award to fees incurred in the litigation in court.").

resulting combination of increased litigation costs and decisions by benefits plans to pay questionable claims so as to avoid such costs could severely undermine the congressional purpose of promoting "the soundness and stability of plans with respect to adequate funds to pay promised benefits." 29 U.S.C. § 1001(a) (2002); see Cann, 989 F.2d at 317.

319 F.3d at 150.

Lodestar Calculation

Because ERISA, 29 U.S.C. § 1132(g)(1), provides for fee shifting without specifying the methodology to be used, a lodestar time and rate method is preferred. Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 526 (1st Cir. 1991). See also Colby, 635 F. Supp. 2d at 97, citing Tennessee Gas Pipeline v. 104 Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994). "The 'lodestar method' of calculating attorneys' fees awards requires the district judge to multiply the number of hours productively expended by counsel by a reasonable hourly rate." Burke v. McDonald, 572 F.3d 51, 56 n.5 (1st Cir. 2009). "In crafting its lodestar, the trial court may adjust the hours claimed to remove time that was unreasonably, unnecessarily or inefficiently devoted to the case and subject to principles of interconnectedness, the trial court may disallow time spent litigating failed claims." De Jesus Nazario v. Morris Rodriquez, 554 F.3d 196, 207 (1st Cir. 2009) (citations omitted).

In total, McGahey requests an attorney's fee of $61,219.00. McGahey's attorney (a solo practitioner) has appropriately divided the hours that he billed into "core" hours (legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders), and "non-core" hours (letter writing, telephone conversations, and tasks of a clerical nature). See Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 860 (1st Cir. 1998); Brewster v. Dukakis, 3 F.3d 488, 492 n.4 (1st Cir. 1993). He asks the court to adopt a core hourly billing rate of

$395 and a non-core hourly billing rate of $265 in his case.  (An appreciable reduction from the core rate for non-core work is consistent with prior decisions of the Court of Appeals. See, e.g., Brewster, 3 F.3d at 492-493).

Harvard contests the hourly rates as overly generous and suggests that a core rate of $250 an hour and a non-core rate of $150 an hour are appropriate substitutes.  These suggested rates appear to be derived from this court's award of a $250 an hour core rate in Giannone, a case decided almost six years ago.[4]

The court on the whole finds McGahey's attorney's requested billing rates to be somewhat closer to the mark, given the affidavits submitted by Boston-area ERISA attorneys who report current billing rates between $300 and $550 an hour, and the court's awards in more recent related cases.  See Walsh v. Boston Univ., 661 F. Supp. 2d 91, 111 (D. Mass. 2009) (approving $350 an hour attorney fee rate in an Americans with Disabilities Act case); Colby, 635 F. Supp. 2d at 100 (approving $300 an hour ERISA attorney fee rate); McCormick v. Metro. Life Ins. Co., No. 06-30032 (D. Mass. Nov. 1, 2007) (approving $275 an hour ERISA attorney fee rate).  The court also notes that since Giannone was decided, the National Consumer Price Index (CPI) has risen a compounded 17 to 18 percent.

Extrapolating from the rate approved by this court in Giannone and taking inflation into account (recognizing that costs in Boston typically rise faster than the national average reflected in the CPI), and relying on the court's general knowledge of billing rates charged

---

[4]The attorney who was awarded fees in Giannone has submitted a declaration on behalf of McGahey stating that he now bills at an hourly rate of $485.  Feigenbaum Decl. ¶ 25.

by Boston-area attorneys, and considering the skill and experience of McGahey's attorney, the court finds an hourly core rate of $350 to be reasonable.  Considering the same factors and First Circuit precedent, the court will award a non-core billing rate of $225 an hour.

McGahey's attorney reports that he expended 125.8 core hours and 43.5 non-core hours on this litigation.  The court finds these hours reasonable given the complexities and duration of McGahey's case.  The court also notes that Harvard does not object to the number of hours billed or to the sufficiency of their itemization.  See Weinberger, 925 F.2d at 527.  The court further notes that McGahey has appropriately subtracted 12.3 hours of work related to unsuccessful efforts (e.g., supplemental research on the prior record of one of Harvard's independent medical examiners).  Cf. Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 296 & n.5 (1st Cir. 2001).

The court's lodestar calculation results in a compensable fee of $53,817.50.  This amount is AWARDED.  The additional $5,000 McGahey seeks for fees related to the pursuit of the Plan's administrative appeals process is DISALLOWED.

### ORDER

For the foregoing reasons, the motion for attorney's fees is ALLOWED in part and DENIED in part.  Harvard will reimburse McGahey attorney's fees in the amount of $53,817.50.  As indicated, McGahey has previously been awarded her taxable costs.

SO ORDERED

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE